MATTER OF S—AND B—C—

In EXCLUSION and DEPORTATION Proceedings

A-11460920
A-10633389

*Decisions by Board June 2, 1960*

*Decided by the Attorney General October 2, 1961*

**Misrepresentation—Section 212(a)(19), 1952 act—Criteria for determining materiality.**

(1) A misrepresentation under section 212(a)(19) of the Act is material if either (A) the alien is excludable on the true facts, or (B) the misrepresentation tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might well have resulted in a proper determination that he be excluded.

(2) The same test for determining materiality is applicable to misrepresentations involving identity, which are no longer to be accorded a special status.

(3) Where it is shown that the alien's misrepresentation choked off a relevant line of inquiry which might have resulted in a proper determination of excludability, the alien has the burden of establishing the true facts and bears the risk that uncertainties resulting from his own obstruction of the inquiry may be resolved against him.

EXCLUDABLE: Act of 1952—Section 212(a)(19) [8 U.S.C. 1182(a)(19)] Visa
(S—)      procured by fraud.
Act of 1952—Section 212(a)(28)(I)(i) [8 U.S.C. 1182(a)(28)
(S—)      (I)(i)]—Member of Communist Party of foreign country.

DEPORTABLE: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at time of entry as alien who has procured a visa or other documentation by fraud or misrepresentation.
(B—C—)

**BEFORE THE BOARD**
(June 2, 1960)

In re: *Matter of S—*

DISCUSSION: The special inquiry officer ruled that the applicant is admissible to the United States. The District Director, Buffalo District, believes that the applicant is inadmissible on the first ground stated above and has filed this appeal. It will be dismissed.

The applicant, a resident of Canada, a 32-year-old male, a native of Yugoslavia, last a citizen of Hungary, now stateless, seeks entry as a visitor. He admits that he was a member of the Communist Party of Hungary from December 1947 to October 1956, but claims that he was not a voluntary member. He did not reveal his membership to the consul when he applied for the nonimmigrant visa which he now has.

The issue is whether the concealment of membership was material.

The special inquiry officer found that the membership was involuntary; he, therefore, held that it did not constitute a ground of inadmissibility. He found that the concealment of membership had been willful, but ruled that the concealment did not constitute a bar to entry because it was not material (it had not hidden a ground of inadmissibility). The District Director agrees that membership is involuntary but has filed this appeal in the belief that the concealment is material, since, in his opinion, the record establishes that the consul would have refused to issue a visa had he known of the membership.[1]

The applicant's uncontradicted explanations of the manner in which he became a member of the Communist Party follow: In 1947, when he was about 17 years of age, he was attending school in Hungary. His parents had been taken to Germany as forced laborers and he was alone. The fact that his parents were in the West put him in a class which was regarded with suspicion. He was receiving a government allowance while attending school (p. 2,

---

[1] The District Director also contended that the special inquiry officer was without jurisdiction to determine the voluntariness of the membership until a United States counsel first ruled on the issue. This contention and counsel's argument in answer to it need not be discussed because the Service has abandoned this position (*Matter of V—*, 8—554; *Matter of P—*, 8—302). Review of this case had been held in abeyance pending ruling on the jurisdictional issue.

At oral argument, the Service representative, using evidence that is not in the record, and contrary to the position taken by the District Director in filing the appeal, contended that the applicant's membership was voluntary. This issue is not properly before us. When an applicant for admission is ordered admitted and the district director takes an appeal, the district director notifies the applicant in writing of the grounds of the appeal and the applicant is allowed five days to make his representations (8 CFR 236.5(c); District Director's letter of July 10, 1959). The District Director conceded that the membership was involuntary; his moving papers took no issue with the special inquiry officer's finding that membership was involuntary. There is an orderly procedure prescribed by regulation for bringing issues before the Board. These procedures provide due process for the alien. They should be complied with. (Moreover, it is improper on appeal to take administrative notice of debatable matters adverse to an alien. The decision on appeal taken from an order authorizing an applicant's admission must "be rendered solely upon the evidence adduced before the special inquiry officer" (section 236(b), Immigration and Nationality Act; 8 U.S.C. 1226(b).)

Exh. 4) and was living in a government dormitory where he also received board. In 1947 the Communist Party took control of the Government and its educational facilities, and he was told that if he desired to stay in the dormitory he would have to join the Communist Party (p. 3, Exh. 4). He was also informed that he would not be permitted to attend college if he were not a member of the Communist Party and that if he wished to get an allowance or be admitted to the dormitory he or someone in his family would have to be a member of the Party. The applicant then joined; he received free food and lodging and was permitted to continue his studies.

The applicant testified he was an inactive member going to meetings only when brought, that he attended meetings about three or four times a year, that he had no official position, that he never attended indoctrination school of the Communist Party, that he never made speeches or gave any lectures with regard to communism, that his only study of the communist political theory of government had been when it was given to him at school, and that he had never subscribed to any communist publication in Hungary or any other country (p. 4, Exh. 4). He stated that he did not believe in the communist philosophy and that he had been a member of no other unit or group of the Communist Party other than the Communist Party itself. The applicant stated that he saw no harm in joining the Party because its true purpose was masked, and it had been working with and apparently receiving the approval of the Western powers. In the second year of attendance at the university, he realized the nature of the Party but continued with his membership because he had to in order to finish his studies and protect himself. He stated that at the first available opportunity, he fled the country. He testified that if he had been able to continue as a student without joining, he would not have joined the Communist Party (pp. 9, 12; p. 3, Exh. 4). In 1953, the applicant finished his school and took a position in a research institute. He remained a member of the Party until he fled from Hungary. During the Hungarian revolution, the applicant states he was a freedom fighter.

Now we shall consider whether the applicant's failure to reveal that he had been a member of the Communist Party made the visa he received one obtained by fraud. The rule to be applied is that:

a misrepresentation is not material, when made during proceedings for admission into the United States, if the alien would not have been denied a visa or excluded had he told the truth. [*Matter of G—M*, 7—40, Atty. Gen., Apr. 2, 1956, p. 74]

Because it is disturbing that one who deliberately conceals the truth should not be penalized for his act, it should be made clear

that the administrative rule is not a matter of policy but is one based on judicial mandate which does not permit too much leeway. Because some confusion has been brought about by recent judicial pronouncements, we shall briefly state our understanding of the situation.

Leading the list of the authorities relied upon by the Attorney General in making the statement we have quoted is the case of *United States ex rel. Iorio* v. *Day*, 34 F.2d 920 (C.A. 2, 1929). It is the mandate of this case which has been paraphrased by the Attorney General. It is a mandate which until recent years was not questioned by the courts and while it now has its judicial critics, it has not lost its judicial defenders. Iorio entered as an alien in 1902. He paid several fines for liquor violations and was imprisoned for illegal possession of liquor. In 1926 he went to Italy on a visit. There he obtained a visa which in 1927 he used to reenter the United States. In procuring the visa, he stated under oath that he had never been imprisoned. After his return he regularly engaged in the illicit sale of liquor. The Service attempted to deport him on the charge, among others, that he had procured his visa by fraud by swearing that he had never been imprisoned. The court held the ground of deportation was bad in law, stating (at p. 921) that "It is true that the relator was bound to tell the truth on his application, but, if what he suppressed was irrelevant to his admission, the mere suppression would not debar him. Doubtless it might be made to do so, but we cannot find that it has been. So the first question comes down at most to whether the facts, had he disclosed them, would have been enough to justify the refusal of a visa or exclusion upon entry." The court concluded that since the violation for which respondent had been imprisoned did not involve moral turpitude, *i.e.*, was not a ground of inadmissibility, Iorio had not suppressed "facts which would have justified him [the vice consul] in refusing a visa, had he disclosed them * * *" (p. 921).

If there are any doubts from the discussion in *Iorio* that the facts which would have been enough to justify refusal of a visa or exclusion upon entry are those which reveal a ground of inadmissibility, *United States ex rel. Teper* v. *Miller*, 87 F. Supp. 285 (S.D. N.Y., 1949), the latest case cited by the Attorney General in support of his rule should lay them at rest. *Teper* clearly reveals that a suppressed fact is material only if the fact suppressed was a ground of exclusion under the law. The issue then is not, as the District Director sees it, whether a consul would have refused a visa; rather, it is whether a *proper* refusal could have been made (*In re Field's Petition*, 159 F. Supp. 144, 147 (S.D. N.Y., 1958)).

In an effort to reconcile decisions in apparent conflict with *Iorio*, we do not read *Iorio* and the cases adhering to it as finding ma-

teriality only where an alien was excludable at the time of entry—in some cases it is proper to establish that the alien was *probably* excludable. Where the claimed ground of inadmissibility is based on defects in the personality—matters which cannot be established with scientific certainty—or where Congress made a ground of inadmissibility dependent upon the "opinion" of a consul, or where judgments must be formed as to whether an alien seeks to enter for purposes inimical to the welfare of the nation, then it is sufficient to establish that grounds for the proper refusal of a visa probably existed (*United States* v. *Flores-Rodriguez*, 237 F.2d 405 (C.A. 2, 1956) ; *Matter of C—T—P—*, 8—134).

In 1956 the Service, in the belief that *United States ex rel. Jan-kowski* v. *Shaughnessy*, 186 F.2d 580 (C.A. 2, 1951), had disapproved *Iorio*, pressed for a rule declaring the materiality of any misrepresentation knowingly made which had a natural tendency to impede, hinder, or forestall an investigation into an alien's eligibility for the issuance of a visa. The matter was brought to the attention of the Attorney General whose order dated May 8, 1956, showed no inclination to depart from the paraphrase of *Iorio* found in his order of April 2, 1956 (*Matter of G—M—, supra; Matter of S—C—*, 7—76, 92). Subsequent decisions both in the circuit where *Iorio* was decided (*In re Field's Petition*, 159 F. Supp. 144 (S.D. N.Y., 1958), and other circuits (*Calvillo* v. *Robinson*, 271 F.2d 249 (C.A. 7, 1959) ; *Herrera-Roca* v. *Barber*, 150 F. Supp. 492 (N.D. Cal., 1957)) ; reaffirmed the validity of the *Iorio* rule.

We realize that several circuits are not convinced that the *Iorio* rule represents the law today. One court has stated that it believes the majority rule to be "that the fact the alien might have obtained a visa on the true facts does not vitiate the fraud or misrepresentation" (*Viruette Torres* v. *Hoy*, 269 F.2d 289 (C.A. 9, 1959) ; *Duran-Garcia* v. *Neelly*, 246 F.2d 287 (C.A. 5, 1957); *Landon* v. *Clarke*, 239 F.2d 631 (C.A. 1, 1956) ; *Ablett* v. *Brownell*, 240 F.2d 625 (C.A. D.C., 1957)). However, the Attorney General's opinion of April 2, 1956, is binding upon us and requires termination of these proceedings.

Membership, to be a ground of inadmissibility, must be voluntary (*Matter of B—*, 5—72). The special inquiry officer and District Director have found the membership to be involuntary. The matter misrepresented was not a ground of inadmissibility; it cannot be held that the visa was obtained by fraud (*United States ex rel. Teper* v. *Miller, supra*). The special inquiry officer properly found the applicant admissible. The appeal of the District Director will be dismissed.

This record reveals that when the applicant applied for an immigrant visa in Austria after he had fled from Hungary, he revealed the facts concerning his Communist Party membership and apparently because of the membership was refused an immigrant visa. This situation is analogous to those where an alien has come to the United States using a visa which he obtained without revealing all the facts he should have; the alien is placed in expulsion proceedings; the consul states in a letter which is part of the record that had he known the true facts he would not have issued a visa. Under such circumstances, we have found the rule to be that when a case had left the jurisdiction of the Department of State, the issue as to whether there had been concealment of grounds which made the alien inadmissible and would have been the *proper* basis for the refusal of a visa is one for the authority considering the issue (*Matter of S—C—, supra*, pp. 77–78; *Matter of C—T—P—, supra*, p. 139; see *In re Field's Petition, supra*, p. 146).

The Service representative contends that the visa is invalid under 22 CFR 42.42(b). This section does not invalidate a visa which has been issued; it merely provides authority to a consul for refusing to issue a visa where certain requirements have not been met or there has been a false statement. Neither it nor section 42.44 of 22 CFR, which does authorize the revocation of a visa procured by fraud or misrepresentation, has, as counsel points out, been used to invalidate the applicant's visa.

In view of the action we have taken, we have found it unnecessary to explore several of counsel's contentions.

ORDER: It is ordered that the appeal of the District Director be and the same is hereby dismissed.

### BEFORE THE BOARD
#### (June 2, 1960)

In re: *Matter of B—C—*

DISCUSSION: Respondent appealed from the order of the special inquiry officer requiring his deportation. On June 3, 1959, we found respondent deportable and granted him voluntary departure. A motion for reconsideration was filed; it was denied on November 17, 1959. Another petition for reconsideration is now before us. It will be denied.

Respondent, a 54-year-old married male, a native and national of Mexico, lived in the United States as a permanent resident from 1927 to 1930. From 1944 to 1946, he worked in the United States as a contract laborer. From 1952 to August 30, 1954, he worked in the United States as a contract laborer after having gained admission in his nephew's name (E—B—G—). On May 3, 1954, he

441

entered as a contract laborer, again using the name of his nephew. He was admitted to the United States for permanent residence upon surrender of a visa on April 24, 1956. This is also the date of his last entry.

We have found that respondent procured a document by fraud when he obtained an agricultural worker's card (Form I-100C) to enter as an agricultural laborer on May 3, 1954; that he procured another document by fraud when he obtained his visa in 1956; and that either of these procurements made him inadmissible to the United States when he last entered.

Counsel contends that respondent procured nothing by fraud since he would have been entitled to what he had received had he told the truth. In other words, it is counsel's contention that the misrepresentation as to identity is not material for it did not conceal a ground of inadmissibility. Counsel cites several cases in support of his contention. It may be stated that there is nothing in this record to reveal that respondent could not have qualified for a laborer's permit in his own name. For the purpose of this discussion, we shall assume that respondent could have qualified in his own name to enter as an agricultural laborer.

The issue is one which, as far as this Board is concerned, the Attorney General settled in *Matter of B— and P—*, 2—638, when he held that a misrepresentation as to identity is material even though it did not conceal a ground of inadmissibility. Little can be added to what has already been stated in *Matter of B— and P—*; therefore, our discussion of the case involving this difficult problem will be brief. As the statutes and decisions have been administratively interpreted, there are now two rules existing in misrepresentation cases. One rule applies to misrepresenations made as to identity; the other rule applies to all other types of misrepresentations. In identity cases, a misrepresentation is *always* material; that is, the misrepresentation is material whether or not the alien gained any substantial benefit by it. In the nonidentity cases, the rule is that a misrepresentation is material if by it the alien received a benefit he would not otherwise have been eligible for (*Matter of B— and P—*, *supra*, *Matter of G—M*, 7—40, Atty. Gen.'s Op. pp. 74–75; *Matter of S—C—*, 7—76, Atty. Gen.'s Op. p. 92). Counsel is apparently of the view that there is only one rule in misrepresentation cases, and it is that a misrepresentation is material (even though it pertains to identity) only if by it the alien gained something to which he was not entitled. The cases cited by counsel in support of his contention are *United States ex rel. Iorio* v. *Day*, 34 F.2d 920 (C.A. 2, 1929); *United States ex rel. Leibowitz* v. *Schlotfeldt*, 94 F.2d 263 (C.A. 2. 1938); *In re Iwanenko*, 145 F. Supp. 838 (N.D. Ill., 1956); *Calvillo*

442

*v. Robinson,* 271 F.2d 249 (C.A. 7, 1959) ; and *Clarke v. Landon,* 139 F. Supp. 113 (D.C. Mass., 1956).

We do not believe that the cases cited by counsel are authority for denying the existence of the separate rule in identity cases. In *Iorio,* the court held that a concealment of the conviction of crime and the service of a sentence was not material because it did not conceal a ground of inadmissibility. Identity was not involved. *Leibowitz,* as is shown by the analysis in *Matter of B— and P—, supra,* pp. 641–642, involved an individual who had assumed a name several years before he applied for a visa. By the time he applied for the visa he was generally known by the assumed name. The court held that the misrepresentation as to name was not material. The distinction is that Leibowitz had applied for the visa in a name which had become his own; the alien here was not known by the name he assumed. In *Iwanenko,* the court held that a misrepresentation as to place of birth was not material, since the deception had not given the alien a right she would have been denied had she told the truth. Identity was not involved. In *Calvillo,* the court held that a failure to reveal residence in the United States was not material. Identity was not involved. The district court decision in *Clarke v. Landon,* cited by counsel, was overruled on appeal (239 F.2d 631, C.A. 1). The circuit court declared that a misrepresentation as to identity *was* material, and the case may be added to those cited in *Matter of B— and P—* as holding that an identity misrepresentation is always material. In effect, counsel would have us depart from the rules set forth in *Matter of B— and P—.* We can see no reason to do this. In *Matter of B— and P—* we stated that the rule as to identity was founded in the public interest. The rule has existed for many years without either judicial or congressional criticism.

We shall now attempt to apply the rules to the situation before us. One who obtained an immigration document by fraud is ineligible to enter the United States whenever he attempts to enter (*Matter of G—G—,* 7—161, 164–165). Respondent is charged with having obtained an agricultural worker's card (Form I–100C) by misrepresentation. If respondent obtained such a card under a false identity, or if he concealed a ground of inadmissibility when he applied for the card, his misrepresentation was material and the document he obtained was procured by misrepresentation. Respondent applied for the issuance of an agricultural laborer's card which authorized him to enter for work in the United States. He obtained such a permit by voluntarily using a false identity. It was not an identity by which respondent was known generally before he entered the United States. Under these circumstances, whether or not respondent would have been admissible had he applied for the docu-

443

mentation in his own name, his misrepresentation was material and he obtained documentation by misrepresentation (*Matter of P—F—*, 6—164). This alone is sufficient to support the charge. Moreover, respondent created another ground of inadmissibility when he obtained a second document (the visa) by concealing the fact that he was inadmissible. When he applied for a visa, he concealed both his use of an alias and the fact that he had been in the United States illegally. These facts would have shown the consul that respondent was inadmissible as a person who had procured a document by fraud and, therefore, that he was ineligible for the issuance of a visa.

**ORDER:** It is ordered that the motion be and the same is hereby denied.

BEFORE THE ATTORNEY GENERAL

(October 2, 1961)

In re: *Matter of S— and B—C—*

**DISCUSSION:** These cases present different aspects of the question whether misrepresentation by an alien in connection with the procurement of a visa or other documentation necessarily excludes him from admission to the United States under section 212(a)(19) of the Immigration and Nationality Act of 1952, and renders him subject to deportation under section 241(a)(1) of that Act as one who was excludable at the time of entry. 8 U.S.C. 1182(a)(19), 1251(a)(1). Because the numerous decisions on this question by the Board of Immigration Appeals, the Attorney General and the courts have not been wholly clear or consistent, a re-examination of the principles which should govern the disposition of such cases by the Executive Branch is appropriate. Accordingly, I have had the cases referred to me under 8 CFR 3.1(h)(1)(i).

Section 212(a) enumerates various classes of aliens who shall be ineligible to receive visas and excluded from admission into the United States. One such class is:

(19) Any alien who seeks to procure, or has sought to procure, or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by willfully misrepresenting a material fact.

As a statutory ground of exclusion this provision is new in the 1952 Act. However, decisions under earlier immigration acts have held that a willful misrepresentation of material fact subjected the alien to exclusion or deportation on various grounds, such as that the misrepresentation defeated inspection, *United States ex rel. Volpe* v. *Smith*, 62 F.2d 808, 811 (C.A. 7, 1933), or that a visa procured by misrepresentation is no visa, *Ablett* v. *Brownell*, 240 F.2d 625 (C.A. D.C., 1957). In general, the judicial and administrative decisions have applied the same tests of materiality, regardless of whether the

ses arise under the 1952 Act or prior laws, and have in effect
eated section 212(a)(19) of the 1952 Act as declaratory of pre-
ously existing law.

In the cases before me, the Board of Immigration Appeals, prop-
rly regarding itself as controlled by prior administrative decisions
which had been affirmed by my predecessors, applied two different
ests of materiality to the misstatements. In the case of S—, the
alien, a Hungarian, failed to disclose in his application for a non-
immigrant visa issued by the U.S. Consul at Toronto, Canada, and
in a subsequent entry interview the fact that he had been a member
of the Communist Party in Hungary from December 1947 to Octo-
ber 1956. Before the special inquiry officer, he admitted his Com-
munist Party membership and explained it in a manner which
persuaded the officer that it was involuntary within the meaning
of section 212(a)(28)(I) of the Act, and hence not a ground of
exclusion. The Board, considering that involuntariness had been
conceded by the District Director, treated the alien's membership as
involuntary. Applying the rule stated by the Attorney General in
*Matter of G—M—*, 7—40, 74 (1956), that "a misrepresentation is not
material . . . if the alien would not have been denied a visa or
excluded had he told the truth," the Board held the alien should be
admitted.

In the case of B—C—, the alien, a Mexican, had lived in the
United States as a permanent resident from 1927 to 1930, and had
worked as a contract laborer in the United States from 1944 to
1946, and from 1952 to August 1954. He was again admitted as a
permanent resident on April 24, 1956. In 1952 and in May 1954,
he entered the United States on agricultural laborer's cards issued
in the name of his nephew. In connection with these entries he
also misstated his wife's name. In his visa application in 1956
he gave the correct names of himself and his wife, but failed to
disclose several of his prior residences in the United States, includ-
ing those which followed his entries using his nephew's name, and
failed to disclose his use of an alias. The Board of Immigration
Appeals pointed out that "there is nothing in this record to reveal
that that respondent could not have qualified for a laborer's permit
in his own name." However, applying the rule which it regarded as
settled by the Attorney General's affirmance of its decision in *Matter
of B— and P—*, 2—638 (1947), that a misrepresentation as to identity
"is always material," the Board ordered the alien deported.

In both cases the sole issue is materiality. There is no doubt
that the misrepresentations were willful, in the sense that they were
deliberately made with knowledge of their falsity.

Since the issue as to materiality of a false statement under section 212(a)(19) arises in both administrative and judicial proceedings, it is appropriate to give substantial weight to the decisions of the federal courts on the question. However, the various district and circuit courts have differed as to the test to be applied, and these differences have not been resolved by the Supreme Court. Accordingly, in the exercise of my statutory responsibilities under section 103 for the administration and enforcement of the immigration and naturalization laws and for making determinations on questions of law arising under these laws which will be controlling within the Executive Branch, it is appropriate for me to adopt such interpretation of section 212(a)(19) as I believe will be most consonant with the purposes and policies of the Immigration and Nationality Act.

The Conference Report on the 1952 Act reflects a concern, in the administration of section 212(a)(19), both with "fair humanitarian standards" and with the need to "prevent the evasion of law by fraud" (House Report No. 2096, 82d Congress, 2d Session, p. 128). False statements to the United States, under oath, should not lightly be condoned, particularly, as the Report indicates, if they serve to cut off the investigation which Congress provided for. As one court has observed, to allow an alien to make a false statement which chokes off investigation into a substantial question of eligibility for a visa, and then, when the falsity is discovered, "try out his eligibility just as if nothing had happened," is "an invitation to false swearing." *Gunduxe y Marino* v. *Murff*, 183 F. Supp. 565, 567 (S.D., N.Y., 1959), affirmed sub nom. *Gunduxe y Marino* v. *Esperdy*, 278 F.2d 330 (C.A. 2, 1960), cert. den. 364 U.S. 824 (1960). Moreover, a rule that false statements are material only if on the true facts the alien was excludable would deny subsection (19) any effect as an independent ground of exclusion, since in every case the alien would be excludable because of the existence of other grounds of exclusion and the fact that he had made false statements would add nothing. I am unwilling to approve an interpretation which would deny any practical significance to subsection (19), in the face of the clear congressional intent by that section to create a separate and independent ground of exclusion.

On the other hand, it is important to remember that—

Shutting off the opportunity to come to the United States actually is a crushing deprivation to many prospective immigrants. Very often it destroys the hopes and aspirations of a lifetime, and it frequently operates not only against the individual immediately but also bears heavily upon his family in and out of the United States. (Report of the President's Commission on Immigration and Naturalization, Jan. 1, 1953, p. 177.)

An alien ought not be excluded from entry or subjected to deportation, because of a misrepresentation made at some time in the

446

remote past in connection with an entry into the United States, unless the misrepresentation had at least some tendency to enable the alien to obtain documents or entry which he might not have obtained without it. As the Report of the President's Commission subsequently emphasized, not every past mistake should operate as a permanent exclusion.

In *Matter of G—M—*, *supra*, the test that a misrepresentation is not material unless the alien would have been excludable on the true facts was said to be consistently applied by the courts, citing one decision of the seventh circuit and four decisions within the second circuit. Although recently reaffirmed by the seventh circuit, *Calvillo* v. *Robinson*, 271 F.2d 249, 253 (C.C.A. 7, 1959), that test has now been definitely rejected by the second circuit, *United States ex rel. Jankowski* v. *Shaughnessy*, 186 F.2d 580, 582 (C.A. 2, 1951); *Ganduxe y Marino* v. *Murff*, *supra*; *In re Field's Petition*, 159 F. Supp. 144, 147 (S.D. N.Y., 1958); cf. *United States* v. *Flores-Rodriguez*, 237 F.2d 405, 412 (C.A. 2, 1956), and by every other circuit that has passed on the question. *Landon* v. *Clarke*, 239 F.2d 631, 634–6 (C.A. 1, 1956); *Ablett* v. *Brownell*, 240 F.2d 625, 630 (C.A. D.C., 1957); *Duran-Garcia* v. *Neelly*, 246 F.2d 287, 291 (C.A. 5, 1957); *Viruette Torres* v. *Hoy*, 269 F.2d 289, 291 (C.A. 9, 1959); and see *McCandless* v. *United States ex rel. Murphy*, 47 F.2d 1072 (C.A. 3, 1931); *Daskaloff* v. *Zurbrick*, 103 F.2d 579 (C.A. 6, 1939).

On the related question whether naturalization should be revoked as having been procured "by concealment of a material fact or by willful misrepresentation," the Supreme Court has recently indicated that the facts concealed are material if either "they would have warranted denial of citizenship" or "their disclosure might have been useful in an investigation possibly leading to the discovery of other facts warranting denial of citizenship." *Chaunt* v. *United States*, 364 U.S. 350, 355 (1960); see *Costello* v. *United States*, 365 U.S. 265, 269–270 (1961).

The test of materiality which in my judgment will best effectuate the objectives of the Act is the following: A misrepresentation made in connection with an application for visa or other documents, or with entry into the United States, is material if either (1) the alien is excludable on the true facts, or (2) the misrepresentation tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might well have resulted in a proper determination that he be excluded. This test is generally consistent with the prevailing judicial authorities, cited above.

This test should be applied also to misrepresentations relating to identity. In *Landon* v. *Clarke*, supra, the first circuit stated that a misrepresentation as to identity which resulted in entry without proper statutory investigation "is always material, . . . no matter

447

what the outcome of the investigation would have been if it had been made," 239 F.2d at page 634. See also *McCandless* v. *Murphy*, *supra* (C.A. 3); *Duran-Garcia* v. *Neelly*, *supra*, at page 291 (C.A. 5). Other circuits, however, have applied the rule that a misrepresentation as to identity, like other misrepresentations, is material only if the alien gained through it some advantage to which he would not have been entitled under the true facts. *United States ex rel. Fink* v. *Reimer*, 96 F.2d 217, 218 (C.A. 2, 1938), cert. den. 305 U.S. 618; *United States ex rel. Leibowitz* v. *Schlotfeldt*, 94 F.2d 263 (C.A. 7, 1938). On principle, I see no valid basis for distinguishing between different types of misrepresentations and for applying a special rule to cases involving identity. While a misrepresentation as to identity will generally have the effect of shutting off an investigation, so also will misrepresentations as to place of residence, prior exclusion or deportation from the United States, criminal record, Communist Party membership, *etc.* No good reason appears for saying that in one type of case the mere shutting off of an investigation is enough, regardless of what its results would have been, while in all the others consideration must also be given to what the investigation might have shown. The 1952 Act makes no such distinction; indeed, the fact that it provides for exclusion of aliens who "procure" documents by misrepresentation suggests an intent that the misrepresentation must have had at least some tendency to achieve a result which would not have been achieved without it.*

The application of the test set forth in this opinion will turn on the answers to three questions.

*First*, does the record establish that the alien is excludable on the true facts? If it does, then the misrepresentation was material. If it does not, then the second and third questions must be considered.

*Second*, did the misrepresentation tend to shut off a line of inquiry which is relevant to the alien's eligibility? A misrepresentation as to identity or place of past residence, for example, would almost necessarily have shut off an opportunity to investigate part or all of the alien's past history, and thus have shut off a relevant investigation. In other situations, the tendency of the misrepresentation to shut off a relevant line of investigation may depend on the particular facts. It should be emphasized that, as the *Chaunt* decision indicates, a remote, tenuous, or fanciful connection between a

---

* Where the visa or other document presented by the alien as the basis for entry into the United States is issued in the name of another, a question may be presented as to whether the alien satisfies the requirement of section 212(a)(20) that he possess a "valid" visa or other document. *Cf. United States ex rel. Fink* v. *Reimer, supra; Matter of B— and P—, supra,* at pages 639–40. No such question is presented in the case of B—C— since the alien's last entry was on a visa issued in his own name.

misrepresentation and a line of inquiry which is relevant to the alien's eligibility is insufficient to satisfy this aspect of the test of materiality.

*Third*, if a relevant line of inquiry has been cut off, might that inquiry have resulted in a proper determination that the alien be excluded? On this aspect of the question the alien bears the burden of persuasion and proof. Having made a willful misrepresentation which tends to cut off a relevant line of investigation, he cannot now try out his eligibility as if nothing had happened. *Ganduxe y Marino* v. *Murff, supra.* The law recognizes numerous situations in which one who, by his intentional and wrongful act, has prevented or restricted an inquiry into relevant facts bears the burden of establishing the true facts and the risk that any uncertainties resulting from his own obstruction of the inquiry may be resolved against him. Compare, *e.g., The Idaho*, 93 U.S. 575, 585–6 (1876); *Holland* v. *United States*, 348 U.S. 121, 130–32 (1954); II Wigmore, Evidence §§ 278, 291.

Frequently the alien will attempt to meet this burden by evidence that on the true facts he is eligible for admission to the United States. The weight to be given such evidence will depend in large part on whether the government authorities have had adequate opportunity, once the misrepresentation became known, to conduct the kind of investigation which would have been conducted had there been no misrepresentation. Where the opportunity for adequate investigation has been lessened because of the alien's misconduct in making a deliberate misrepresentation, either because of the passage of time or for other reasons, the alien's evidence of his eligibility may be unpersuasive, for the same reasons that have led courts to strike or to place little or no weight on evidence with respect to which the opposing party, through no fault of his own, was denied adequate opportunity for cross-examination. Compare *Communist Party* v. *Subversive Activities Control Board*, 351 U.S. 115. On the other hand, where the government officials have made an adequate investigation after the misrepresentation became known, or have had reasonable opportunity to do so, an unrefuted showing of eligibility by the alien may be highly persuasive that the misrepresentation was not material.

In a sense, of course, any misrepresentation which delays an investigation could be said to have impaired the opportunity for investigation. One can always speculate that a witness might have become unavailable or less cooperative, or a document have been mislaid, or some other investigative opportunity lost, by the passage of time. Where a reasonably adequate investigation fails to suggest the existence of a ground of exclusion, however, such theoretical possibilities are not a sufficient basis for denying valuable rights

449

to the alien. On the other hand, where the available facts indicate the existence of a substantial question as to the alien's eligibility to enter the United States, the possibility of such an impairment of investigative opportunity may in some cases be sufficient to warrant a holding that the alien's misrepresentation was material. In close cases the government ought not be required to speculate as to what would have been the results of an investigation which the alien has prevented.

The two cases before me well illustrate some of the variations that can occur. In the S— case it is obvious that disclosure of the alien's Communist Party membership in connection with his visa application would have raised a serious question as to the alien's admissibility, and would have been likely to lead to further investigation of the question whether his membership was voluntary or involuntary. It is quite possible that investigation by the State Department, either into the alien's own activities or into the correctness of his statements as to conditions existing in Hungary during the period of his Communist Party membership, would have led to a proper denial of a visa. Indeed it appears that on an earlier application to the consul in Vienna in which the alien disclosed his Communist Party membership, the visa was denied, for reasons which do not appear in this record. Even on the alien's own testimony it is at least a very close question, which I am not required to and do not decide, whether his Communist Party membership was "necessary" to enable him to obtain employment, food rations, or other essentials of living, or merely convenient in the sense that it facilitated his obtaining an education and bettering his status in life. It would not be necessary to question the alien's credibility or sincerity in order to determine that the investigation, which would have been made had the alien stated the true facts in his application for visa, might well have produced independent evidence sufficient to tip the scales of decision in the opposite direction. On the present record I find that the alien's failure to disclose his Communist Party membership was a material misrepresentation which renders him excludable under section 212(a)(19).

In the case of B—C—, the Board's decision rested on two sets of misrepresentations by the alien: (1) misrepresentations of his and his wife's identity in obtaining agricultural worker's permits in 1952 and 1954, and (2) failure in his 1956 visa application to disclose his prior residence in the United States following the 1952 and 1954 entries, and his use of an alias in connection with those entries. As to the first, there is no doubt that the alien's use of his nephew's name in obtaining agricultural worker's cards in 1952 and 1954 shut off investigation at that time. But there is nothing in the record to indicate that if he had used the true name of himself and

his wife the resultant investigation would have revealed a ground of exclusion. Indeed, the fact that the alien was allowed, presumably after appropriate investigation, to enter the United States under his correct name, both before and after the two entries in question, is persuasive that his use of his nephew's name had no tendency to procure a result which he might not have procured under his own name. On the record before me, I do not find that the alien's misrepresentation, in obtaining agricultural worker's cards in 1952 and 1954, of his and his wife's names was material.

As to the 1956 misrepresentations, the Board treated them as material because they concealed the 1952 and 1954 entries; since the Board regarded the misrepresentations made in connection with the earlier entries as making the alien excludable under section 212(a)(19), it considered that the 1956 misrepresentations concealed a ground of exclusion and for that reason were material. In view of my holding as to the 1952 and 1954 misrepresentations, this ground of decision cannot stand. On remand, the Board should reconsider the materiality of the 1956 misrepresentations in the light of this decision.

This decision applies a test of materiality different from those heretofore applied by the Board. In order not to foreclose any party from presenting any new evidence or contentions which may have become relevant in the light of this decision, and which such party was not under any obligation to present earlier, the cases will be remanded to the Board of Immigration Appeals for such further proceedings, consistent with this opinion, as it deems appropriate.