MATTER OF BOROMAND

In Section 246 Proceedings

A-19278665

*Decided by Board August 1, 1980*

(1) In the absence of evidence to support a finding of a fraudulent or sham marriage or legal dissolution of the marriage, the denial of an adjustment of status application or the subsequent rescission of an adjustment grant cannot be based solely on the nonviability of the marriage at the time of the adjustment application. *See Matter of McKee,* Interim Decision 2782 (BIA 1980).

(2) To the extent that *Matter of Sosa,* Interim Decision 2469 (BIA 1976), holds that an alien seeking admission to the United States as the spouse of a United States citizen or lawful permanent resident may be excluded solely because the marriage upon which such status is based is "nonviable", it is overruled. *Matter of Kondo,* Interim Decision 2781 (BIA 1980), modified.

(3) Where investigation of marital relationship conducted and evidence did not indicate a fraudulent or sham marriage, respondent's misrepresentation that he and his wife were residing together at the time of his adjustment application, did not constitute a material misrepresentation to render him ineligible as a matter of law for adjustment of status under section 245 of the Immigration and Nationality Act, 8 U.S.C. 1255. *See Matter of S— and B—C—,* 9 I&N Dec. 436 (BIA 1960; A.G. 1961). Rescission proceedings commenced pursuant to section 246 of the Act, 8 U.S.C. 1256, terminated.

ON BEHALF OF RESPONDENT:  Mark A. Anvaripour, Esquire
11 East Adams Street, #604
Chicago, Illinois 60603

BY:  Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

This is an appeal from a March 5, 1979, order of an immigration judge, rescinding the adjustment of status which had been granted the respondent under section 245 of the Immigration and Nationality Act, 8 U.S.C. 1255. The appeal will be sustained.

The respondent is a 29-year-old native and citizen of Iran who last entered the United States on January 10, 1973, as a nonimmigrant student. On August 8, 1973, the respondent married Patricia Seymour, a United States citizen, in Chicago, Illinois. The respondent's wife filed an immediate relative visa petition on his behalf on January 24, 1974, which was approved on February 23, 1974. On August 7, 1974, the

respondent's status was adjusted to that of a lawful permanent resident based on his marriage to Patricia Seymour.

On March 11, 1975, the respondent was notified by the Service of its intention to rescind the adjustment of status granted him on August 7, 1974. The notice of rescission charges that the respondent's adjustment of status is subject to rescission under section 246 of the Act, 8 U.S.C. 1256, since at the time of adjustment, the respondent and his wife were not living together in a marital relationship. It further charges that the respondent made false statements concerning his relationship with his wife in order to secure permanent residence in the United States.

In his decision rescinding the respondent's grant of adjustment of status, the immigration judge found that although the respondent and his wife had entered into a lawful marriage, the parties had ceased living together in March 1974, and that no bona fide husband and wife relationship existed at the time the respondent was granted his adjustment of status in August 1974. He found further that the respondent had falsely stated at his August 7, 1974, Service interview conducted in connection with his adjustment application, that he was residing with his wife. Based on the materiality of this misrepresentation, the immigration judge concluded that the respondent was ineligible for the adjustment of status granted him. See section 212(a)(19) of the Act, 8 U.S.C. 1182(a)(19).

On appeal, counsel for the respondent argues that since the respondent's marriage was not a fraudulent one, the grant of his adjustment of status cannot now be rescinded based on the marital difficulties of the parties. It is contended that the statements of the respondent and his wife indicating that they were not living together were made in states of anger and rage. Furthermore, it is maintained that a statement made by the respondent on December 18, 1974, in which he averred that he married Patricia Seymour for the sole purpose of obtaining lawful permanent status, was made without the benefit of counsel and that the respondent did not knowingly and intelligently sign the statement. It is argued that the immigration judge erred by admitting this statement into evidence.

At the rescission hearing, the respondent testified that he and his wife were living together at the time of his adjustment application in August 1974, and that they continued cohabiting until November 1974. He maintained that his statement to the immigration officer on December 18, 1974, that he and his wife stopped living together in March 1974 was untrue and that he was upset at the time the statement was made. In a sworn statement dated December 10, 1974, and at the hearing, the respondent's wife stated that she and the respondent ceased living together in March 1974. She also testified that she was

forced to tell the immigration officer that she and the respondent were living together at the time the respondent applied for adjustment because the respondent had threatened her. A friend of the respondent's wife verified this information in a sworn statement dated August 13, 1975. Contained in the record are a divorce complaint and counter-complaint filed by the parties in 1974 and 1975, which indicate that they cohabited until on or about February 27, 1974.

Based upon the demeanor of the witnesses and the inconsistencies of the respondent's statements, the immigration judge found that the respondent's testimony lacked credibility and that the testimony of his wife was worthy of belief. An immigration judge's findings regarding the credibility of witnesses appearing before him are entitled to considerable weight. *Matter of Teng*, 15 I&N Dec. 516 (BIA 1975); *Matter of S—*, 8 I&N Dec. 574 (BIA 1960). Furthermore, counsel's contention that the immigration judge erred in admitting the respondent's December 18, 1974, statement into evidence is without merit. The officer who took the statement testified that he informed the respondent of his right to counsel (Tr. p. 8). Moreover, we note that there is no right to counsel during the taking of a preliminary statement in the investigation stage. *See Matter of Steele*, 12 I&N Dec. 302 (BIA 1967); *Matter of Argyros*, 11 I&N Dec. 585 (BIA 1966). There is no indication that the respondent made the statement involuntarily or that he did not understand what he was signing. Therefore, we find that the immigration judge properly admitted the statement into evidence.

Based on the foregoing evidence, we conclude that the respondent misrepresented the status of his marriage at the time he applied for adjustment of status. The inquiry in this case does not end here however since it must also be determined whether the respondent's misrepresentations regarding his marriage were material in order to render him ineligible for adjustment of status under section 212(a)(19) of the Act. In *Matter of S— and B—C—*, 9 I&N Dec. 436 (BIA 1960; A.G. 1961), it was held that a misrepresentation under section 212(a)(19) of the Act is material if (1) the alien is excludable on the true facts, or (2) the misrepresentation tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might well have resulted in a proper determination that he be excluded. The same test of materiality can be applied to the misrepresentation in this case since an applicant for adjustment of status is placed in the same position as an alien applying for admission to the United States as an immigrant.

In *Matter of Sosa*, 15 I&N Dec. 572 (BIA 1976), we addressed the issue of separation and marriage viability and its relationship to an adjustment of status application in the context of the spousal visa petition underlying the adjustment application. That case involved an alien who had originally been admitted to the United States as a lawf'

452

permanent resident based on his marriage to a United States citizen and who subsequently sought admission to this country as a returning resident. We found there that since the applicant's marriage to his United States citizen wife was not viable at the time he applied for his immigrant visa and sought admission to the United States, his immigrant visa was invalid and he was therefore inadmissible to the United States under section 212(a)(20) of the Act, 8 U.S.C. 1182(a)(20). This conclusion was based on our finding that the applicant and his wife had ceased living together very shortly after their marriage and that their marriage was "dead" prior to the issuance of the applicant's immigrant visa and his admission to this country as a lawful permanent resident. We stated there that since it was the intent of Congress to exempt alien spouses of United States citizens from the numerical limitations of the Act in order to prevent the separation of families and to preserve the family unit, immigration benefits could not be conferred on the basis of a nonviable or terminated marriage.

Our decision in *Sosa, id.,* was consistent with our previous decisions which held that a visa petition could only be approved where the petitioner established that he and the beneficiary had entered into a bona fide marriage which is presently viable and ongoing. *See Matter of Mintah,* 16 I&N Dec. 540 (BIA 1975), *modified, Matter of McKee,* Interim Decision 2782 (BIA 1980). However, in *Matter of McKee, id.,* we adopted the position expressed in *Chan v. Bell,* 464 F.Supp. 125 (D.D.C. 1978), wherein it was held that a visa petition filed on behalf of an alien spouse could not be denied solely because the parties to the marriage were no longer living together. Under *Chan* and *McKee,* the issue is not whether there is a presently subsisting or "viable" marriage (assuming there is no legal separation or dissolution of the marriage), but rather whether the marriage was entered into for the primary purpose of circumventing the immigration laws. *See also Dabaghian v. Civiletti,* 607 F.2d 868 (9 Cir. 1979). Therefore, to the extent that *Matter of Sosa, supra,* holds that an alien seeking admission to the United States as the spouse of a United States citizen or lawful permanent resident may be excluded solely because the marriage upon which such status is based is "nonviable", it is hereby overruled.[1] However, *Sosa* remains valid precedent to the extent that it stands for the proposition that an alien seeking admission as an immigrant may be found inadmissible if the marriage upon which his visa petition was based has

---

[1] We note that in *Dabaghian v. Civiletti, supra,* the Ninth Circuit held that a marriage legally valid but "factually dead" (nonviable) at the time of adjustment of status cannot be the basis for rescission. In light of that decision, we held in *Matter of Kondo,* Interim Decision 2791 (BIA 1980), that *Sosa, supra,* is no longer applicable law in the Ninth Circuit. To the extent that our decision in *Kondo* implies that *Sosa* is applicable in circuits other than the Ninth Circuit, it is hereby modified.

been legally terminated.

In keeping with this line of cases, we conclude that in the absence of evidence to support a finding of a fraudulent or sham marriage or evidence showing the legal dissolution of the marriage at the time of the adjustment, the denial of an adjustment of status application or the subsequent rescission of such grant cannot be based solely on the nonviability of the marriage at the time of the adjustment application.

In the present case, it does not appear that the respondent married Patricia Seymour for the sole purpose of evading the immigration laws. *See Lutwak v. U.S.,* 344 U.S. 604 (1953); *Bark v. INS,* 511 F.2d 1200 (9 Cir. 1975); *Matter of Phillis,* Interim Decision 2407 (BIA 1975). The parties were married two months after they met. At the hearing, the respondent's wife testified that the parties had a good relationship for the first month of their marriage until the respondent left to attend school in Louisiana. It appears from her testimony that it was only after the respondent returned from Louisiana three months later that the parties' differences surfaced (Tr. p. 34). Subsequent to his return, the respondent and his wife cohabited for a three month period. In a sworn statement dated December 10, 1974, the respondent's wife claimed that the respondent informed her prior to their marriage that his school tuition would be less expensive if he married a United States citizen and became a lawful permanent resident. She further maintained in that statement that the respondent offered her a Persian rug if she would marry him. At the hearing however, she stated that the respondent gave her the rug after their marriage and that he did not pay her any money for the marriage (Tr. pp. 25, 39). In addition, she maintained that she married the respondent because she loved him (Tr. p. 33). Although the respondent's wife at one time stated that she believed that the respondent had married her in order to obtain immigration benefits, she later testified that she did not think the respondent's immigration problems were his only reasons for marrying her (Tr. pp. 34, 35). Based on the facts and circumstances in the present case, we find that the parties entered into a bona fide marriage with the intent of joining together as husband and wife and that the respondent did not marry Patricia Seymour for the primary purpose of obtaining immigration benefits.

Based on the foregoing, we conclude that in this particular case the respondent's adjustment of status grant cannot be rescinded based on the charge that he materially misrepresented his living arrangements with his wife at the time of his adjustment application. Since we have concluded that an adjustment application cannot be denied based solely on the nonviability of the marriage at the time of adjustment, the respondent's misrepresentation cannot be considered material in this regard. Furthermore, since we find that the respondent's marriage

454

was not a sham, the respondent's misrepresentations did not cut off a line of inquiry which would have lead to a denial of his adjustment application.[2] *See generally, Matter of S— and B—C—, supra.* Accordingly, the appeal will be sustained and the proceedings shall be terminated.

ORDER: The appeal is sustained. The proceedings commenced pursuant to section 246 of the Act are hereby terminated.

---

[2] The record indicates that there was no legal separation or dissolution of the marriage at the time of the adjustment application. Therefore, we need only address the question of whether the marriage was a sham or fraudulent at its inception.