MATTER OF FRISONE

In DEPORTATION Proceedings

A-8836375

*Decided by Board November 19, 1962*

An alien who has been the beneficiary of a visa petition based on a marriage found later to have been contracted for the purpose of evading the immigration laws (section 205(c)) cannot claim the benefit of the waiver provided by section 241(f) of the Immigration and Nationality Act, as amended.

CHARGE:

Order: Act of 1952—Sections 241(a)(2) and (c) [8 U.S.C. 1251(a)(2) and · (c)]—Visa procured by fraud in violation of section 212(a)(19) [8 U.S.C. 1182].

Respondent is 35 years of age, married, male, alien, a native and national of Italy. He first entered the United States in June 1954 as a deserting seaman. He was apprehended by the Immigration and Naturalization Service in October 1954 and was paroled for one week to arrange to post a $1,000 bond. He last arrived in the United States on August 8, 1955 and was admitted for permanent residence upon presentation of a nonquota immigrant visa. This case has been before the Board on several occasions. It is necessary to retrace briefly the proceedings to date. On August 21, 1958, following a thorough hearing, during which respondent was represented by counsel of his choice, the special inquiry officer ordered respondent deported on the charge set forth above. Respondent appealed to this Board, and his counsel filed a brief in support of the appeal. On October 22, 1958 we dismissed the appeal. We found that respondent had obtained his visa on the basis of his marriage to a United States citizen at Syracuse, New York on November 13, 1954, and that marriage was annulled on July 9, 1956. We stated (B.I.A., October 22, 1958, p. 3), "Clearly, the respondent has failed to sustain his burden under the statute and the Government has established by a preponderance of the evidence that he entered into his marriage with Frances Buda to evade the quota requirements of the immigration laws."

117

During the proceedings in 1958 there was an indication that respondent had entered into another marriage with a United States citizen, but he offered no evidence regarding this marriage during the deportation proceedings and made no request that the second marriage be considered in any grant of discretionary relief. Counsel's memorandum in support of the appeal to this Board stated that respondent was married to a legally resident alien. The record indicates that respondent's present wife is now a naturalized United States citizen and that two citizen children have been born to this marriage.

There was no action taken in this matter after our order of October 22, 1958 until March 20, 1962 when the Board received a notice of motion for a reopening, reconsideration and termination of warrant proceedings filed by present counsel. The Board heard oral argument on the motion, ordered the outstanding order and warrant of deportation withdrawn and the proceedings reopened. We agreed that evidence relating to respondent's present marriage and his two United States citizen children should be made a part of the record, particularly in light of legislation enacted since the entry of the outstanding order of deportation which, counsel alleged, made respondent nondeportable. We pointed out that the proceedings also should be reopened in order to give the Service an opportunity to consider or oppose the grant of relief sought by counsel under the new legislation.

Following the reopened hearing on July 3, 1962, and the filing of briefs by both counsel for the alien and by the examining officer, the special inquiry officer denied respondent's application for the waiver *nunc pro tunc* provided by section 16 of the Act of September 26, 1961, adding section 241(f) to the Immigration and Nationality Act.[1] The special inquiry officer granted him voluntary departure. The special inquiry officer found that deportation of respondent would result in serious detriment and hardship to his citizen wife and children, that the wife is unemployed and that respondent is the sole support of the family. The special inquiry officer denied the *nunc pro tunc* waiver under section 241(f) solely on the ground that he found the alien

---

[1] Section 16 of the Act of September 26, 1961 provides:

Sec. 16. Section 241 of the Immigration and Nationality Act (8 U.S.C. 1251) is hereby amended by adding the following:

(f) The provisions of this section relating to deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence.

not to have been "otherwise admissible", as required by that section, at the time of his last entry on August 8, 1955.

At the time of his last entry respondent was the beneficiary of a visa petition filed by his first wife and previously was accorded non-quota status under section 101 (a) (27) (A). We have again reviewed the entire record. The special inquiry officer's decision restates at some length facts which were adjudicated by the special inquiry officer and this Board in 1958. Counsel argues that this constituted a re-opening of the entire record, and justifies his request to cross-examine the alien's first wife. He seeks, first, to readjudicate the issue of whether the first marriage was fraudulent upon the part of the alien, asserting that the marriage broke up after seven or eight months of genuine effort by the alien to make it a good marriage. Counsel pleads that the marriage was basically a misalliance, and that the religious barrier was only one of the obstacles.

There is no claim of new evidence relating to the first marriage which required the presence of the first wife at the reopened hearing. The fraudulent nature of the first marriage was established in 1958. The alien contracted a second marriage which is undoubtedly *bona fide*. It was to give him an opportunity to show the facts of the new marriage, asserted as the basis for relief, that this case was reopened and returned to the special inquiry officer. The refusal of the special inquiry officer to subpoena the first wife and to treat the case as a hearing de novo was not error.

Counsel argues, second, that respondent did not commit a fraud by entering as the nonquota spouse of a United States citizen, because for some purposes an annulment does not annul the marriage from the beginning, but only from the date of the annulment. Counsel claims that the Domestic Relations Law of New York makes respondent's first marriage void only from the time a judgment is rendered by the court. He quotes section 7 of that statute as follows, "A marriage is void from the time its nullity is declared by a court of competent jurisdiction if either party thereto . . . (4) consents to such marriage by reason of force, duress or fraud." Counsel admits that the New York cases generally sustain the idea, in spite of the statutory declaration, that a voidable marriage declared void by a court is void *ab initio*. Counsel contends, however, there is a minority view and cites *Barker* v. *Barker*, 172 App. Div. 244 (1916).

The special inquiry officer found respondent was not the lawful spouse of a United States citizen at time of entry and was not, therefore, a nonquota immigrant. He states (special inquiry officer, August 9, 1962, p. 11):

Had all the facts been known by the Government on August 8, 1955, the date of respondent's entry, he would have been found inadmissible under section 212

(a)(20) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(20)) as an immigrant who is not in possession of a valid unexpired immigrant visa or other entry document. The respondent has failed to clearly establish that he was "otherwise admissible" at the time of entry. . .

The special inquiry officer did not consider or refer to the provisions of section 205(c), as amended by section 10 of the Immigration and Nationality Act of September 26, 1961.[2]

The Service representative argued before this Board (1) that respondent was either not a nonquota immigrant or he had no valid visa, and (2) that even had the annulment not taken place, if the marriage was in fact a fraudulent marriage, the no valid visa charge would be sustainable, if the Service had chosen to bring that charge.

On several occasions the Board has had appeals from denials of visa petitions, and we have said that a visa petition proceeding was not the correct form in which to litigate the legality of a marriage. In those cases we have returned the visa petition to the Service for the purpose of having the validity of the marriages adjudicated in deportation proceedings. This is just such a case, and it comes up now in a deportation proceeding.

Counsel pleads that the equities of the case justify waiving the fraud of the respondent's first marriage, if there was fraud. Counsel admits that if respondent is required to depart, he is not again eligible for nonquota status as the spouse of a United States citizen because of the prohibition of section 10 of the Act of September 26, 1961, amending section 205(c) of the Immigration and Nationality Act (see footnote 2).

The Board has held routinely in *visa petition* cases where an alien has been accorded nonquota status as the spouse of a United States citizen and approval of the visa petition was later revoked for fraud, that such a beneficiary could not qualify for nonquota status on the basis of a subsequent marriage, even though the subsequent marriage may be bona fide. *Matter of W—*, Int. Dec. No. 1222 (B.I.A., May 22, 1962); *Matter of A—*, Int. Dec. No. 1223 (B.I.A., June 1, 1962).

Both the Service representative and counsel recognize that Public Law 87-301, September 26, 1961, contains two divergent provisions. In application these provisions appear to be conflicting. Section 16 (see footnote 1) is an abbreviated but broadened reenactment of section 7 of the Act of September 11, 1957, which was conceived primarily to

---

[2] Section 10 of the Act of September 26, 1961, amends section 205(c) of the Immigration and Nationality Act by adding: "Notwithstanding the provisions of this subsection, no petition shall be approved if the alien previously has been accorded, by reason of marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws—(1) a nonquota status under section 101(a)(27)(A) as the spouse of a citizen of the United States. . ."

assist refugees and displaced persons who had made misrepresentations to avoid repatriation to certain geographical areas in Europe following World War II, or for other defensive reasons.

The Board was precluded from granting advance waivers under section 7 of the Act of September 11, 1957 to aliens *within* the United States, as that provision was interpreted by the Attorney General in *Matter of DeF—*, 8 I. & N. Dec. 68. Under that statute respondent in the instant matter would have been precluded from the waiver, because he would have to depart from the United States to obtain it, and then the prohibition of section 10 of the Act of September 26, 1961 (against granting a visa petition on the basis of his second marriage) would have come into play. However, the waiver provided by section 16 of the Act of September 26, 1961 clearly gives the authority simply to terminate proceedings when the waiver is granted.

Section 10 of the Act of September 26, 1961 is an entirely new provision of law. Referring to section 10, this Board said in *Matter of R—*, Int. Dec. No. 1188:

The legislative history indicates that the amendment was proposed to strengthen existing law by giving the Attorney General a new legal instrumentality to counteract the increasing number of fradulent acquisitions of non-quota status through sham marriages between aliens and United States citizens. The legislation was prompted by a recent report of the Attorney General to Congress about the increasing number of such sham marriages, indicating the existence of marriage schemers operating in various parts of the country arranging for high fees, for deceitful marriages involving in most instances alien seamen.[3]

Sections 12, 14, 15 and 16 of the Act of September 26, 1961 give enlarged rights and special consideration to aliens who are the spouse, parent or child of a United States citizen or legally resident alien, and who otherwise would be excludable or deportable. However, section 10 of the same Act indicates that Congress intended that the expanded privileges are not to be available even to a *bona fide* spouse, if he has in the past been party to a sham marriage entered into for the purpose of evading the immigration laws. Even though section 10 of the Act of September 26, 1961 specifically forbids only the approval of a visa petition in his behalf, it indicates the intention of Congress that the immigration status of such a person is not to be adjusted under any of the ameliatory acts.

Counsel maintains that the words "otherwise admissible" in section 16 are not a bar to a grant of the waiver, claiming that this phrase refers to a state of inadmissibility which might exist apart from the fraud, *e.g.*, criminality, feeble-mindedness, insanity, epilepsy. Counsel asserts that the words "otherwise admissible" mean that, except

---

[3] H. Rept. No. 1086, 87th Cong., 1st Sess., pp. 36, 37.

for the fraud and the impediment of the fraud, respondent must not have had some other impediment at the time of entry that would make him inadmissible.

The Service asserts that to be "otherwise admissible" means that the respondent must have been in possession of a valid visa at the time of his entry, and that respondent cannot receive the waiver. He was actually a quota immigrant, who entered as a nonquota immigrant. See *Matter of D'O—*, 8 I. & N. Dec. 215 (1958), wherein we held that proceedings could not be terminated under section 7 of the Act of September 11, 1957 (P.L. 85-316) where respondent evaded the quota restrictions by securing entry as a nonquota immigrant. We stated in *D'O—* that there is nothing in the history of section 7 of the Act of September 11, 1957 which indicates that it was the intention of Congress to remove the careful protection which had been built into the immigration laws regarding quotas. We stated, "Section 7 excuses the presence of fraud. It does not wipe out the existence of *all* other grounds of inadmissibility which may have been present. Section 7 also excuses the fact that an alien had been charged to the wrong quota." We agree with the Service contention that respondent was not "otherwise admissible" at the time of his last entry as required by section 16 of the Act of September 26, 1961.

We are well aware of the hardship factors on which counsel has dwelt at length. The same factors exist in the visa petition cases, of which Interim Decisions Nos. 1222 and 1223 are examples. There are certain to be family ties in the alien's favor in these cases; otherwise, this problem in statutory construction could not arise since there would be no visa petition filed in his behalf, and no request for a waiver under section 241(f) which is available only to a spouse, parent or child of a United States citizen or lawfully resident alien.

We find nothing in the record to justify reexamination of the issue of the good faith of respondent's first marriage. Aside from the testimony of respondent's first wife, he admitted that he would have left the United States when he was first apprehended if he had not found someone to post the $1,000 bond for him. He also testified that he knew that some of his friends from Sicily had married in the United States and had been permitted to remain here. Respondent was represented throughout the 1958 proceedings by counsel who was vigorous and knowledgeable.

Section 16 of the Act of September 26, 1961 provides an absolute waiver for an alien who has procured documentation by fraud and who comes within the other requirements of the provision. If respondent were given such a waiver he and the Government would be in an untenable position. He could not get a visa, because of the prohibition contained in section 10 of the Act of September 26, 1961, but neither

could he be deported. He could not be granted a legal status, but neither could his illegal status be litigated, because these proceedings would have been terminated. Aside from the finding that respondent was not "otherwise admissible" at entry, it is our conclusion that an alien who has been the beneficiary of a visa petition based on a marriage found later to have been contracted for the purpose of evading the immigration laws, cannot claim the benefit of the waiver provided by section 16 of the Act of September 26, 1961, adding section 241(f) to the Immigration and Nationality Act. This is the only interpretation which reconciles section 205(c) as amended, with section 241(f) of the Immigration and Nationality Act.

ORDER: It is ordered that the appeal be and is hereby dismissed.