Giuseppe **ERRICO**, Petitioner,

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE**, Respondent.

No. 19282.

United States Court of Appeals
Ninth Circuit.

July 9, 1965.

Rehearing Denied Aug. 14, 1965.

Frank M. Ierulli, Gerald H. Robinson, Portland, Or., for petitioner.

Cecil F. Poole, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for respondent.

Before MERRILL, DUNIWAY, and ELY, Circuit Judges.

ELY, Circuit Judge:

Petitioner, now thirty-one years of age, emigrated from his native Italy and, with his wife, gained admission to the United States on October 17, 1959. His parents and all of his brothers and sisters reside in this country, and his son, an American citizen, was born here on August 3, 1960. He was admitted as a selected immigrant under the first preference of the Italian immigration quota. The status was approved under the authority of Section 203(a) (1) (A) of the Immigration and Nationality Act (8 U. S.C. § 1153(a) (1) (A)). The visa peti-

tion had been submitted by a motor company of Portland, Oregon, and was supported by representations, in the form of affidavits originating in Italy, that the petitioner was a specialized mechanic and motor tune-up man on motors of Italian manufacture. Eight days after his arrival in New York City, the petitioner commenced his employment with the Portland motor company. The record reveals that he was given the assignment of performing work on German motors with tools which were strange to him. He remained in this employment for only three months, having failed, according to a finding of the Special Inquiry Officer, "to measure up to the requirements of a specialized mechanic." On August 29, 1960, he entered the employ of Victory Plating Works, Inc., of Portland, and he has remained continuously in such employment.

On September 11, 1963, the Immigration and Naturalization Service issued an Order to Show Cause and Notice of Hearing In Deportation Proceedings in which it was alleged that petitioner was "not a specialized mechanic and tune-up man as alleged. And on the basis of the foregoing * * *, it is charged that you are subject to deportation pursuant to the following provision(s) of law:

Section 241(a) (1) of the Immigration and Nationality Act, in that, at time of entry you were within one or more of the classes of aliens excludable by the law existing at the time of such entry, to wit, aliens who are not of the proper status under the quota specified in the immigrant visa, under Section 211(a) (4) of the Act."

A hearing followed, and while it was shown that before he left Italy, and in anticipation of his prospective employment in the United States, the petitioner worked for a few months as an unpaid apprentice in an Italian garage, there was ample evidence to support a finding by the Special Inquiry Officer that the petitioner, at the time of his entry into the United States, was not a qualified

automobile mechanic or a specialist in motors of Italian manufacture.

The petitioner sought relief from deportation under the provisions of Section 211(c) and (d) of the Immigration and Nationality Act of 1952 (8 U.S.C. § 1181(c) (d)), which provide, in effect, that the Attorney General may, in his discretion, grant relief to an inadmissible alien "if satisfied that such inadmissibility was not known and could not have been ascertained by the exercise of reasonable diligence by such immigrant" prior to his entry to the United States. The petitioner's application for this relief was denied upon the ground that the petitioner knew of his lack of qualifications prior to his departure from Italy and consequently could not qualify for favorable discretionary action under the provisions of Section 211(c). It is our opinion that the Special Inquiry Officer properly applied Section 211(c) and that the denial of relief under this Section, affirmed by the Board of Immigration Appeals, was correct.

In all stages of the proceedings, the petitioner has insisted that he is saved from deportation by Section 241(f), Immigration and Nationality Act (8 U.S.C. § 1251(f)), which provides:

> "The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens *who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation* shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence." (Emphasis added)

It is important to note that the italicized language has been adopted from Section 212(a) (19) (8 U.S.C. § 1182(a) (19)), one of many sections designating classes of aliens who "shall be ineligible to receive visas and shall be excluded from admission into the United States:". We have seen that the petitioner is a parent of a United States citizen and the child of aliens lawfully admitted for permanent residence. It is also established that the petitioner procured "visas or other documentation, or entry into the United States by fraud or misrepresentation." Against the petitioner, it has been contended that in the Order to Show Cause, he was not charged with being inadmissible because of the provisions of Section 212(a) (19) relating to aliens who have gained entry by fraud or misrepresentation, but with inadmissibility under the provisions of Section 211(a) (4) of the Immigration and Nationality Act (8 U.S.C. § 1181(a) (4)) which reads:

> "(a) No immigrant shall be admitted into the United States unless at the time of application for admission he * * * (4) is of the proper status under the quota specified in the immigrant visa, * * * *".

This contention, carefully considered by the Special Inquiry Officer, was correctly treated in his decision as follows:

> "The respondent has established the necessary relationship to come within the provisions of Section 241(f). Several questions, however, remain. The first, whether the provisions of Section 241(f) would apply to his case because he is charged with inadmissibility under the provisions of Section 211(a) (4) of the Immigration and Nationality Act relating to aliens who at entry were not of the proper status specified in the immigrant visa, rather than under Section 212(a) (19), aliens who procured a visa by fraud or willfully misrepresenting a material fact. The Board of Immigration Appeals, in the Matter of K——, I & N Dec. 585, 589, March 9, 1962, reaffirmed the previous order in Matter of S——, 7 I & N Dec. 715, holding that the section of law under which the deportation charge is laid is immaterial. The Board, in Matter of K——, stated: 'There are, however,

other provisions of Section 241(a) which render an alien deportable after entry on charges which flow directly from the entry by fraud or misrepresentation. The two charges set forth in Section 241(a) (2) come within this category. Since Section 241(f) described in *general terms* aliens whose documentation or entry was procured by fraud or misrepresentation, we are of the opinion that it was the intent of Congress to save from deportation those aliens who were admissible except for the fact that they had made fraudulent statements regardless of the provision of the statute under which their deportation is sought.'

It is concluded that the fact that the charge, excludable at entry for fraud or misrepresentation, is not urged, would not disqualify the respondent from the benefits of Section 241(f)."

It would therefore appear that petitioner, as an alien who "procured [a visa] or other documentation, or entry into the United States by fraud or misrepresentation" and "who is the  *  *  *  parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence", is saved from deportation by the provisions of Section 241(f) (8 U.S.C. § 1251(f)) if he was "otherwise admissible" at the time of his entry. The Special Inquiry Officer concluded that since this issue of statutory construction "presents a novel question not decided by the Board", it would be "certified to the Board of Immigration Appeals for review and final decision". The Board held that since the petitioner's application for discretionary relief by waiver under Section 211(c) was not granted, he could not be "otherwise admissible at the time of entry" and that "Section 241(f) of the Immigration and Nationality Act has no applicability to this case and need not have been discussed".

▉ We disagree with the Board. Fair interpretation of the legislative history of the Section, its terms, and its re-

lation to other statutes *in pari materia* lead to the conclusion that it is operative to spare the petitioner from deportation. Under its plain terms, the Section purports to grant absolute relief to aliens who have close familial ties in the United States and who have gained entry into the United States through "fraud or misrepresentation". Its benefits are not made dependent upon the exercise of discretion by the Attorney General in the granting of a waiver or in any other manner. It was enacted on September 26, 1961 and modified the terms of a portion of a statute, simultaneously repealed, which contained similar provisions. This previously existing statute, Pub.L. 85–316, 71 Stat. 640, 8 U.S.C. 1251a (not 1251(a)) was enacted in 1957. Upon its repeal, a portion of it was incorporated into Section 1182 of Title 8 as Section (h). This portion conferred upon the Attorney General the discretionary power to consent to the admission to the United States of certain aliens upon certain conditions, in general, as follows: (1) Aliens with certain close relatives already in the United States (2) whose exclusion would result in extreme hardship to the relatives residing in the United States (3) whose admission to the United States would not be contrary to the national welfare, safety, or security and (4) who were excludable from the United States under paragraphs (9), (10), or (12) of Section 212(a) of the Immigration and Nationality Act (8 U.S.C. § 1182). Paragraphs (9), (10), and (12) define three classes of excludable aliens, those who have been convicted of a crime involving moral turpitude, those who have been convicted of two or more offenses for which the aggregate sentences to confinement actually imposed were five years or more, and those who are concerned with traffic in prostitution. Subsection (i) of Section 212, Immigration and Nationality Act (8 U.S.C. § 1182(i)), by its present terms, also grants to the Attorney General certain discretionary powers with reference to the admission of an alien who has close relatives in the United States and who

has sought to procure or has procured entry documentation by fraud or misrepresentation.

Section 7 of the 1957 Act, repealed in 1961, was the near predecessor of the presently existing Section 241(f) (8 U.S.C. § 1251(f) ). It saved from deportation aliens with close relatives in the United States and who had gained entry because of limited misrepresentations with respect to nationality, place of birth, identity, or residence. The Section, however, expressly conditioned the granting of relief upon the consent of the Attorney General and the fact that the alien's misrepresentations were induced by his fear of persecution because of race, religion, or politics. Its legislative history reveals the congressional intent to apply "fair humanitarian standards." See 1952 U.S.C. Cong. and Adm.News, p. 1753, Besterman, Commentary on the Immigration and Nationality Act, 8 U.S.C.A. page 1. A comparison with the provisions of Section 7 of the 1957 Act with those of the successor Act, Section 241 (f), reveals the following: (1) The prescribed United States relatives of the alien are the same, namely, "spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence". (2) The former Act described misrepresentations as to only four facts to which it was obviously aimed, namely, nationality, place of birth, identity, or residence, whereas, the present Section 241(f) contains no limitation as to the type or nature of the fraud or misrepresentation which the alien may have perpetrated or made. (3) The former Section conditioned relief upon the discretion of the Attorney General, favorably exercised in favor of the alien, whereas, in the present Section 241(f), there is no provision which conditions its operation upon the exercise of discretionary powers.

The present Section 241(f) is now the last paragraph of the Section which defines classes of deportable aliens and describes as the first class, "aliens excludable by the law existing at the time of such entry". Section 241(a) (1),

Immigration and Nationality Act (8 U.S.C. § 1251). The determination of who are "excludable by the law" requires reference to Section 212, Immigration and Nationality Act (8 U.S.C. § 1182). There, many classes are defined as excludable, including those defined in Sections (9), (10), and (12), to which we have already made reference and for whom discretionary relief is expressly made available. In the light of the long course of legislative history indicating a congressional intent to apply "fair humanitarian standards", it is not reasonable to believe that Congress, by its enactments and reenactments in 1961, intended thereby to deny relief under the repealed Section 7 to an alien who had gained entry by misrepresenting his nationality, place of birth, identity, or residence and at the same time expressly provide for relief to three specific classes of aliens, those convicted of a crime involving moral turpitude, those engaged in the traffic of prostitution, and those who were ex-convicts upon whom at least five years of confinement had been actually imposed. To us, it seems more reasonable that Congress recognized the unyielding nature of the temptation which might impel an alien to make false misrepresentations above and beyond those pertaining to nationality, place of birth, identity, or residence in the hope of residing in proximity to dear ones already resident in the United States. Furthermore, it is entirely reasonable, in view of the broadening liberalization of the terms of the former Section 7 and the elimination of the provision relating to discretion, to assume that the absolute relief conferred by the statute would save from deportation such aliens who procure their documents of entry by fraud, either because their near relatives already resided in the United States or because, after entry, they were not sought to be deported until after the passage of time and the establishment of intimate familial relationships with citizens of the United States. Perhaps it was sought to encourage responsible officials to scrutinize, with greater care and in

advance of entry, representations made by the alien and others in support of immigrant visa applications.

In its brief in our court, and in oral argument, the Immigration Service has taken the position that the petitioner cannot be "otherwise admissible" under the provisions of Section 241(f) and thereby entitled to relief unless at the same time of his admission under the visa obtained by fraud he was also independently admissible under a different status or a different quota. This would lead to the conclusion that Section 241(f) could never be operative unless the alien, while entitled to a visa of unquestionable validity, had nevertheless fraudulently procured another upon which to base his admission. We cannot believe that Congress concerned itself with study and enactment of a statute which would grant relief only to one, if one can be imagined, who would seek to obtain and would obtain an immigrant visa by re-

course to fraud when he already had or would obtain a separate and valid visa and, if the Immigration Service had issued the two documents, would select for presentation and entry the spurious of the two. Such an interpretation of Section 241(f) would, in our judgment, strip it of all substantial meaning and purpose.[1]

The foregoing considerations lead to the conclusion that the petitioner was not, at the time of his entry, inadmissible by reason of falling within one of the excludable classes defined in Section 212 (8 U.S.C. § 1182); hence, he was, except for the fraud for which he is forgiven under the terms of Section 241(f), "otherwise admissible". He does not fall within the excludable class defined in paragraph (20) of Section 212[2] because of the paragraph's prefatory exception clause. It may be said that our conclusion may encourage aliens to seek entry to our country by fraudulent means

1. The Board of Immigration Appeals in Matter of Slade, I&N., A-10296218 (Nov. 30, 1962), has disagreed. It points to two hypothetical situations in which it sees that Section 241(f) may operate to the alien's benefit. These are seen in the Board's comments as follows:

"Does our conclusion make section 241 (f) of the Act meaningless as counsel contends? We think not. A person deportable as having obtained a visa by fraud is barred from the United States. In the absence of legislation such as that contained in section 241(f) of the Act there could be no waiver of this perpetual bar to the acquisition of lawful permanent residence in the United States even though ties with United States citizens or legally resident aliens existed. Section 241(f) of the Act is also effective to require termination of deportation proceedings where an alien willfully misrepresented a matter which did not make her inadmissible but which was nevertheless material; i.e., a misrepresentation concerning name, existence of a conviction of a crime which did not involve moral turpitude, etc. (see, *Matter of S—— and B—— C——*, Int. Dec. 1168)."

In our view, the Board's opinion is fallacious. In the first assumed situation, it overlooked Subsection (i) of Section 212 (8 U.S.C. § 1182(i)), added by

amendment on September 26, 1961, which, apart from Section 241(f), grants discretionary power to the Attorney General to waive "this perpetual bar to the acquisition of lawful permanent residence in the United States * * *". As to the second situation, "termination of deportation proceedings" would be required even though the provisions of Section 241 (f) did not exist. See Duran-Garcia v. Neelly, 246 F.2d 287, 291, (5th Cir. 1957); Herrera-Roca v. Barber, 150 F. Supp. 492 (N.D.Cal.1957); In re Field's Petition, 159 F.Supp. 144 (S.D.N.Y. 1958). Moreover, it appears quite obvious that the language of Section 241(f) was not drafted for the purpose of requiring the "termination of deportation proceedings" against an alien guilty of a misrepresentation as to "a matter which did not make her inadmissible * * *".

2. "Except as otherwise specifically provided in this chapter, any immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality, if such document is required under the regulations issued by the Attorney General pursuant to section 1181(e) of this title;"

and then, with all haste, to establish or create relationships with American citizens. This may well be true, but our only obligation is to reach and apply the most reasonable construction of the statute.[3] In this construction, it is not our duty to weigh all considerations of national policy, humanitarian or otherwise.

The Order of Deportation is vacated.

DUNIWAY, Circuit Judge:

I concur in the foregoing opinion. I would add that the sole ground upon which it is here asserted that section 241(f) does not apply is that Errico was not "otherwise admissible" within the meaning of that subsection, because, but for the misrepresentation, he was not of the proper status under the quota specified in the visa. I note, however, that section 211(a) under which it is sought to deport him, contains five qualifications for admission, which are are follows:

"(1) * * * a valid unexpired immigrant visa * * *,

(2) is properly chargeable to the quota specified in the immigrant visa,

(3) is a nonquota immigrant if specified as such in the immigrant visa,

(4) is of the proper status under the quota specified in the immigrant visa, and

(5) is *otherwise admissible* under this chapter." (Emphasis added.)

It will be noted that here the phrase "otherwise admissible" refers to matters other than matters of quota status. Section 241(f) is *in pari materia* with section 211(a), and I think it can reasonably be said that the phrase "otherwise admissible" in section 241(f) also refers to disqualifications other than those relating to the quota. This construction, as the opinion of my Brother

Ely indicates, gives some effect to section 241(f). Otherwise it appears that, as his opinion shows, section 241(f) could hardly ever, and perhaps never, be operative.

---

3. Even if there is reasonable doubt as to the proper interpretation of Section 241 (f), the doubt must be resolved in favor of the alien. Fong Haw Tan v. Phelan, 333 U.S. 6, 68 S.Ct. 374, 92 L.Ed. 433 (1948); Barber v. Gonzales, 347 U.S. 637, 74 S.Ct. 822, 98 L.Ed. 1009 (1954); Garcia-Gonzales v. Immigration and Naturalization Service, 344 F.2d 804 (9th Cir. 1965).