MATTER OF MANCHISI

In Deportation Proceedings

A-15835625

*Decided by Board March 17, 1967*

Respondent, whose deportability is established within the purview of section 241(c) of the Immigration and Nationality Act, as amended, having entered the United States in 1962 with a nonquota immigrant visa obtained as the beneficiary of an approved visa petition based on a marriage found later to have been contracted to evade the immigration laws, is not precluded from establishing he is "otherwise admissible" for the purposes of a waiver of the grounds of deportation pursuant to section 241(f) of the Act, as amended, notwithstanding respondent, but for the marriage, would have been chargeable at the time of entry in 1962 to the nonpreference portion of the quota for Italy which was then unavailable because overscribed. [*Matter of Frisone*, 10—117, overruled.]

CHARGE:

> Order: Act of 1952—Sections 241(a)(2) and 241(c) [8 U.S.C. 1251(a)(2) and 1251(c)]—In United States in violation of law—Obtained visa by fraud, based on marriage entered into less than 2 years before entry and annulled less than 2 years subsequent to entry.

ON BEHALF OF RESPONDENT:
Ralph P. Messano, Esquire
591 Summit Avenue
Jersey City, N.J. 07306

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

Thomas W. Winnerman
Trial Attorney
(Filed reply brief)

This is an appeal from the decision of the special inquiry officer, finding respondent deportable as charged; holding him ineligible for the fraud waiver in section 241(f) as one who was not "otherwise admissible"; and granting voluntary departure with an alternate order of deportation to Argentina if respondent should fail to depart when and as required.

Respondent is a 37-year-old twice married male alien, a native and citizen of Italy. He first entered the United States as a crewman in May 1956 and jumped ship. Soon after that arrival, he met Claire Tarquinio, a native born citizen of the United States, and they dated each

other for several months, ending either in 1956 or early 1957. They met occasionally at family gatherings in the next four or five years. In June 1961 respondent met Carmela Rotondo, a lawful permanent resident who had been in the United States for slightly more than a year. He also dated her; it is not clear from the record when, if ever, this relationship ended.

In April 1962 respondent was apprehended by the Immigration and Naturalization Service. He was visited in detention by Carmelo Rotondo and her brother; Claire Tarquinio was not notified by respondent or his friends of his apprehension. The hearing, on April 5, 1962, was attended by Carmela and her brother; in answer to the special inquiry officer's request to identify the young lady, respondent stated:

"We are from the same town and we are friends.—She is my girlfriend, in other words, and we are more than just friends." (Tr. p. 5)

Respondent was granted voluntary departure at the hearing. That evening he visited Claire Tarquinio at her home. She testified that he then, for the very first time, mentioned marriage and proposed to her. Respondent claimed he had proposed in January 1962, before his apprehension. Respondent and Claire agreed they would be married civilly before respondent's departure; that Claire would execute the necessary papers to bring him back to the United States; that upon his return and admission for permanent residence they would be married in the Evangelical Church (Claire's faith); and that the marriage would not be consummated until the church wedding. They were married on April 23, 1962. There was no wedding trip, honeymoon, or living together in any fashion after the marriage.

Claire's petition for her husband was executed on April 24th, submitted with supporting documentation to the Immigration and Naturalization Service on April 25th; approved by the District Director on April 30th; and forwarded to the United States Consulate General in Naples, Italy, where it was received on May 5, 1962. Respondent left the United States under the grant of voluntary departure in the first week of May. There was considerable correspondence between him and Claire which, on his part, consisted almost entirely of complaints that visa issuance was taking such a long time, and inquiries as to whether Claire has taken care of the various facets of the procedure he had asked her to see to. On August 20, 1962, he was issued a nonquota immigrant visa, and on the basis thereof was admitted for permanent residence at New York, New York on August 23, 1962.

Respondent gave his wife no advance notice of the date of the arrival and appeared at her home at about 9 p.m. on the evening of

his return. His wife, who was out visiting, was summoned home by telephone. After she arrived, he spent some time in conversation with her, at her parents' home and in their presence, and then left for his own apartment, with no specific arrangement as to when they would next see each other. There were several meetings between them after that time, all of Claire's seeking, but they all ended in disagreement, with the parties returning to their separate abodes.

Respondent and Claire each testified that the other was responsible for the breakdown of the relationship, that the other was unwilling to behave as a spouse should, to make arrangements for the church wedding, etc. There is no dispute that husband and wife never entered into a normal husband-wife relationship, never were married in the church, never consummated the marriage, and never lived together for as much as a day under the same roof. On October 4, 1962, six weeks after his return to the United States, respondent's wife filed a complaint against him in the Superior Court of New Jersey, Chancery Division, asking for an annulment of the marriage. Respondent contested the action, but after trial a Judgment Nisi, granting the annulment, was filed on June 27, 1963. Respondent took an appeal but was unsuccessful. The lower court's judgment was affirmed, and a final judgment of the nullity of the marriage was entered on August 10, 1964.

On October 31, 1964, respondent married Carmela Rotondo in the Catholic Church. The couple have lived together as husband and wife ever since that time, and there is an American citizen child born of that marriage in October, 1965. Carmela Rotondo Manchisi is now a naturalized citizen of the United States.

Charges herein are brought under subsection (1) of section 241(c). The statute provides that when the facts in the alien's situation are as specified in the statute (marriage less than two years prior to entry; admission documentation procured on basis of marriage; termination of marriage less than two years after entry), the alien shall be deported as having procured a visa or other documentation by fraud, unless the alien shall establish to the satisfaction of the Attorney General that such marriage was not contracted for the purpose of evading the immigration laws. In other words, upon a showing by the Government that the three facts exist, a presumption arises that the alien's visa was obtained by fraud, and the burden then shifts to the alien of overcoming the *prima facie* case by showing that the marriage was not contracted for that purpose. See *Matter of V—*, 7 I. & N. Dec. 460; *Matter of T—*, 7 I. & N. Dec. 417; *Todaro* v. *Pederson*, 205 F. Supp. 612 (1961), 305 F. 2d 377, cert. den. 371 U.S. 891. That burden can be met by a bare preponderance of the evidence; *Matter of V—*, *supra*.

Upon a careful and thorough consideration of the record, we conclude that the respondent has not even approached a showing that he entered into the marriage with Claire Tarquinio in good faith, or for any reason other than the immigration advantage it brought him. In this, we agree with the special inquiry officer who has set out in his opinion, in considerable detail, his reasons for such a finding.

Is respondent deportable under section 241(c), or is he, by virtue of his relationship to his American citizen wife and child, saved from deportation by section 241(f), which states:

"The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence".

The special inquiry officer ruled that respondent was not "otherwise admissible" at the time of entry, and could not benefit from this section. The underlying rationale was that because respondent's marriage to Claire Tarquinio was not valid for immigration purposes, he was not entitled to nonquota status and to the nonquota visa on which he entered. He would, but for the marriage, have been chargeable to the nonpreference portion of the quota for Italy which at the time he entered was so oversubscribed as to be unavailable, and under which he could not have obtained a visa. The special inquiry officer cited as authority *Matter of Slade*, 10 I. & N. Dec. 128; *Matter of Frisone*, 10 I. & N. Dec. 117; and *Scott* v. *Immigration and Naturalization Service*, 350 F. 2d 279 (C.A. 2).

In *Matter of Frisone*, the fact situation was virtually identical with the instant case, and we there held that the alien was not otherwise admissible and, therefore, ineligible for the benefits of section 241(f).

*Matter of Slade* and *Scott* v. *Immigration and Naturalization Service* each involved a woman who entered into an admittedly sham marriage and on the basis thereof gained admission to the United States as the spouse of a citizen. In each case, the woman later gave birth to a child in the United States, out of wedlock, and in deportation proceedings claimed the benefits of section 241(f) as the parent of an American citizen. In each case, the woman was from an area whose quota was oversubscribed and unavailable, so that she could not have obtained a visa without the marriage. In each case, we held that the alien, who was not entitled to the nonquota visa, without which she could not have entered, was not "otherwise admissible", and, therefore, not eligible for relief under section 241(f).

135

A petition for review of the Board's decision in the *Scott* case was brought, pursuant to section 106 of the Immigration and Nationality Act, in the United States Court of Appeals for the Second Circuit, and that court, upon reconsideration of its prior decision in the case, and with one member dissenting, upheld the Board's decision, stating:

"We therefore agree with the Board of Immigration Appeals that Mrs. Scott was not 'otherwise admissible at the time of entry', within the meaning of section 241(f), because the British subquota for Jamaica was oversubscribed when she obtained her visa and when she entered this country." Supra, at p. 284.

The special inquiry officer's decision was in accordance with the controlling legal authorities when made. However, before the time of the argument of the appeal in this case, the Supreme Court had granted certiorari in the case of *Scott v. Immigration and Naturalization Service, supra,* and in *Errico v. Immigration and Naturalization Service,* 349 F. 2d 541, where the Ninth Circuit had reached an opposite result in its determination of the meaning of "otherwise admissible" within the context of section 241(f). Decision on the appeal in this case was held in abeyance pending the ruling of the Supreme Court in the *Errico* and *Scott* cases. The Supreme Court decision was handed down on December 12, 1966 and is reported at 385 U.S. 214. It is discussed at some length in *Matter of Cordero-Santana,* decided February 13, 1967, Interim Decision No. 1694. It affirmed the *Errico* decision, in which the lower court had held the alien otherwise admissible even though he had fraudulently obtained a quota preference for which he was not eligible, and reversed the lower court's holding in *Scott,* described above.

In the instant case, the fact situation and the type of inadmissibility urged by the Government (and found by the special inquiry officer) come clearly within the Supreme Court ruling, and we must, therefore, find the respondent not deportable, and order these proceedings terminated.

The Service, in its memorandum submitted in support of the special inquiry officer's position argues thus:

"The respondent is further precluded from the exemption of section 241(f) on the basis of his (2nd) marriage to a lawful permanent resident (Carmela) because of the prohibitory provisions of section 205(c) of the Immigration and Nationality Act. (8 U.S.C. 1155(c)).

Sec. 205(c) provides in part:

'Notwithstanding the provision of this subsection, no petition shall be approved if the alien previously has been accorded, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws * * *

(2) A preference quota status under section 203(a)(3) as the spouse of an alien lawfully admitted for permanent residence * * * '.

The respondent entered into a fraudulent first marriage by means of which he was accorded a nonquota status. He cannot take advantage of a second but bona fide marriage to obtain a preference quota status." (Service Answering Memorandum Before the Board of Immigration Appeals, pp. 5–6.)

We are not directly confronted with the question of how or whether section 205(c), now a part of section 204(c), is affected by the Supreme Court ruling in the *Errico* and *Scott* cases.[1] No one here seeks to file a petition to obtain immediate family or preference quota status for the respondent, nor do we see that such a petition would be necessary. By the holding that respondent was "otherwise admissible" at the time of his entry, and that his fraud in gaining such entry has been excused under section 241(f) (cf. *Errico* v. *Immigration and Naturalization Service, supra*), that entry has been cleared of illegality, and respondent must still be considered to be an alien who has been lawfully admitted for permanent residence.[2] That this was the status intended to be accorded the alien given the benefits of section 241(f) seems to us obvious from the provisions of its counterpart, section 212(i), relating to aliens still abroad, who may be admitted to the United States for permanent residence if they can meet the requirements of the waiver provision.

**ORDER:** It is ordered that the appeal herein be and the same is hereby sustained, and that the proceedings herein be terminated.

---

[1] Such a situation might arise for an alien who has been previously deported, or found deportable and left on voluntary departure, and who must have immediate family or preference quota status in order to obtain an immigrant visa. It might also arise in the case of a person adjusted under the provisions of section 245, where there has been a revocation of both the adjustment and the underlying petition.

[2] *Matter of Frisone, supra,* must be considered overruled in its entirety.