37 F.3d 1505
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Shirin NOORANI, Petitioner-Appellant,
v.
Richard C. SMITH, District Director of INS; Immigration &
Naturalization Service, Respondents-Appellees.
 No. 93-35666.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 15, 1994.
Decided Sept. 22, 1994.
 
 Before: GOODWIN, D.W. NELSON, and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Shirin Noorani ("Petitioner") appeals the denial of her application for a writ of habeas corpus. She contends that the district court erred in affirming the determination by the Board of Immigration Appeals ("BIA" or "Board") that she was excludable and its denial of her application for asylum and withholding of deportation. Petitioner also contends that the Immigration Judge's ("IJ") refusal to grant her change of venue request resulted in a denial of due process, and that the INS District Director abused his discretion in denying her parole.
 
 
 3
 We affirm the district court's decision in so far as it upholds the BIA's finding on excludability and denies Petitioner's due process claims. We reverse on the issue of eligibility for asylum, and remand for the INS to exercise its discretion.
 
 I. EXCLUDABILITY
 
 4
 Under section 212(a)(6)(C) of the Immigration and Nationality Act ("INA" or "Act"), "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure ... entry into the United States ... is excludable." 8 U.S.C.A. Sec. 1182(a)(6)(C)(i) (West Supp.1993).
 
 
 5
 The BIA concluded that Petitioner had made a willful misrepresentation and that the misrepresentation was material.
 
 
 6
 The BIA rejected Petitioner's version of events and accepted instead border agent Bauthues' testimony that during her initial questioning Petitioner maintained that she possessed U.S. citizenship. With respect to the statements made during Petitioner's interrogation, then, the BIA made a determination that Bauthues was credible and that Noorani was not, the same conclusion reached by the IJ. The record supports the BIA's credibility determination. Accordingly, the BIA's determination that Petitioner misrepresented herself as a U.S. citizen is supported by substantial evidence. Shirazi-Parsa v. INS, 14 F.3d 1424, 1427 (9th Cir.1994).
 
 
 7
 The Board also rejected Petitioner's claim that her statement was not "voluntary" because it was made "under great stress," explicitly adopting the IJ's determination that Petitioner was not credible in this regard. As the IJ noted, Petitioner is a "highly intelligent woman" who has "travelled widely," and the last objective evidence of her assertedly stress-inducing medical condition was dated January 27, 1989. Because the BIA based its credibility determination on a " 'specific, cogent reason' for [its] disbelief" of the relevant testimony, Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir.1992) (quoting Turcios v. INS, 821 F.2d 1396, 1399 (9th Cir.1987)), we hold that substantial evidence supports the BIA's rejection of Petitioner's claim.
 
 
 8
 Finally, we affirm the Board's conclusion that Petitioner's misstatement was "material." A "misrepresentation [under section 212(a)(6) ] is material if (1) the alien is excludable on the true facts, or (2) the misrepresentation tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might well have resulted in a proper determination that he be excluded." In re Boromand, 17 I. & N. Dec. 450, 452 (BIA1980).
 
 
 9
 We affirm the district court's ruling upholding the BIA's determination that Petitioner was excludable on the "true facts" under section 216(a)(6)(C) of the INA.
 
 II. ASYLUM AND WITHHOLDING OF DEPORTATION
 
 10
 The BIA concluded that Petitioner had not carried her burden of demonstrating that she possessed a well-founded fear of persecution on a ground protected under the INA. The Board's decision is best interpreted as finding that Petitioner failed to demonstrate that if she returned to Iran she would be persecuted "on account of" her political opinions or opinions that might be imputed to her because of her father's activities. See Shirazi-Parsa v. INS, 14 F.3d 1424, 1430 (9th Cir.1994). We hold that this finding is not supported by substantial evidence in the record. The Board did not properly recognize Petitioner's documentary evidence "of facts supporting a reasonable fear of persecution." Id. at 1427.
 
 
 11
 Even accepting the BIA's determination that Petitioner's testimony and that of her witnesses was not credible, the three documents sent to Petitioner's father by the Revolutionary Guards, when viewed under the totality of the circumstances, satisfy Petitioner's burden of substantiating a well-founded fear of persecution under the INA. See id. at 1428 (BIA must take into account "cumulative effect" of incidents in social and political context). The first of these documents, the "Notice of Appearance," was served on Petitioner's father by the Revolutionary Guard on August 20, 1991; it required Petitioner to appear before the Islamic Revolutionary Court in September, 1991 or "a warrant arrest will be issued against her." The second document, a "Warning" sent the same day to Petitioner's father, indicated that if Petitioner and her father did not comply with an earlier demand to transfer their land holdings to the Revolutionary Guard, they would be "re-registered and investigated as [having taken] an action hostile to the aims and purpose of the Holy Islamic Revolution." The "warning" stated that if Petitioner and her father failed to appear at a hearing in September, 1991, an ex parte judgment would be entered against them, under which they "will be recognized [as] satanic, profane and corrupted on Earth, and accused of cooperation and afiliation (sic) with foreigners, particularly the Big Devil, Greedy America."
 
 
 12
 Finally, a "Notice of Final Judgment" dated October 20, 1991 (after Petitioner and her father failed to appear at the September hearing) declared that an ex parte judgment had been entered against the father "for Corruption on Earth and Satanic Cooperation." The notice further warned that if Petitioner's father failed to submit himself within thirty days to the Central Komiteh, "the Islamic Revolution Court will sentence you to the maximum penalty." Most importantly, the notice of "Final Judgment" announced that "the Islamic Revolution, District Attorney's Office has evidence showing anti-Islamic Revolutionary behavior by you in Iran and your daughter, Shirin Noorani, in America." The notice informed Petitioner that "[t]his judgment has been sent to all local and foreign law enforcement."
 
 
 13
 Moreover, the very existence of the "Final Judgment" supports Petitioner's claim. Even if the Revolutionary Guard only intended to place pressure on Petitioner's family to obtain the land in 1991, the existence of an official permanent record that the Guard has evidence of Petitioner's "anti-revolutionary" behavior--whether or not such evidence actually exists--could be used by other officials as a pretext to persecute Petitioner or might spur the authorities to undertake further investigations that might lead to persecution. Cf. Shirazi-Parsa, 14 F.3d at 1430 (quoting Canas-Segovia v. INS, 970 F.2d 599, 602 (9th Cir.1992)) ("Whether or not Petitioner actually held the beliefs that the regime attributed to him, it is enough that the regime 'falsely attributes an opinion to the victim, and then persecutes the victim because of that mistaken belief about the victim's views.' ") The Guard's notation on the "Final Judgment" that "[t]his judgment has been sent to all local and foreign law enforcement" lends further support to Petitioner's claim.
 
 
 14
 Petitioner need only establish that a reasonable person in Petitioner's circumstances would fear persecution because the Revolutionary Guards may have the information they claim to have. See INS v. Cardoza-Fonseca, 480 U.S. 421, 431 (1987) (indicating that even a 10% chance of persecution may give rise to a well-founded fear). The evidence here reaches a level sufficient to prove "that persecution is a reasonable possibility." Cardoza-Fonseca, 480 U.S. at 440.
 
 
 15
 The evidence in the record is sufficient to support the conclusion that a reasonable person in Petitioner's position would possess, upon receipt of the "Final Judgment", a well-founded fear of persecution on account of political opinion. See INS v. Elias-Zacarias, 112 S.Ct. 812, 817 (1992); Shirazi-Parsa, 14 F.3d at 1429. Accordingly, we hold that Petitioner made a case for asylum sufficient to require the Attorney General on remand to exercise her discretion under section 208 of the INA.
 
 
 16
 Petitioner also seeks withholding of deportation. The BIA did not address this claim, relying on the established principle that failure to establish entitlement to withholding follows a fortiori from failure to establish eligibility for asylum. See, e.g., Acewicz v. INS, 984 F.2d 1056, 1062 (9th Cir.1993) (noting that the standard for withholding of deportation is more stringent than the asylum standard, and that proof insufficient to establish the latter cannot satisfy the former). In light of our conclusion that the BIA erred in transferring Petitioner's credibility problem from the "excludable" finding to the asylum question, we remand Petitioner's withholding claim to allow the INS to determine whether she has presented evidence sufficient to show that it is "more likely than not that [she] will be subject to persecution" if forced to return to Iran. Cardoza-Fonseca, 480 U.S. at 423 (quoting INS v. Stevic, 467 U.S. 407, 429-430 (1984)).
 
 III. CHANGE OF VENUE
 
 17
 Petitioner also challenges in this appeal only the IJ's denial of her second change of venue request, made immediately prior to her asylum hearing. She contends that she suffered prejudice from the IJ's action because her expert witness, Dr. Spiegel, was required to testify by telephone, which led to the garbling of portions of his testimony. She also claims she was prevented from adequately consulting with her attorney.
 
 
 18
 Petitioner has failed to demonstrate the prejudice required to establish a denial of due process. See Baires v. INS, 856 F.2d 89, 91, 93 (9th Cir.1988). Dr. Spiegel was the only witness who was not able to attend the hearing in Seattle in person. Although his testimony was received telephonically, it appears to have been entirely comprehensible and credited by the BIA, contrary to Petitioner's contention.
 
 
 19
 Furthermore, there is no basis for concluding that the refusal to grant the change of venue request adversely affected Petitioner's or her counsel's ability to prepare for the asylum hearing. The IJ did not abuse his discretion in denying Petitioner's motions for change of venue, and we affirm the district court's order upholding the IJ's decision.
 
 
 20
 IV. BAUTHUES' PRESENCE DURING THE EXCLUSION PROCEEDING
 
 
 21
 Petitioner claims that, "[b]y allowing Mr. Bauthues to hear the testimony of the petitioner and her witnesses [during the exclusion proceedings], he was able to unfairly prepare himself for examination and cross-examination by counsel." Petitioner points to no regulation that expressly prohibits a government witness from hearing the testimony of other witnesses, but she appears to contend that the IJ's practice deprived her of her right to due process.
 
 
 22
 The BIA held that Bauthues qualified as an "officer or employee ... designated as its representative by its attorney," who cannot be excluded from a formal federal hearing under Rule 615 of the Federal Rules of Evidence. The INS expressly called Bauthues as "the designated government representative," and the IJ frequently relied on his expertise in immigration matters when questions within his competence were raised. Thus, Bauthues would have qualified within the exception to Rule 615.
 
 
 23
 INS proceedings are less formal than ordinary trial proceedings. INS v. Lopez-Mendoza, 468 U.S. 1032, 1039 (1984). Consequently, a federal rule that does not violate due process when applied in federal court cannot violate due process when applied in the same manner in an immigration proceeding. Accordingly, the IJ's conduct did not deny Petitioner due process.
 
 
 24
 V. DENIAL OF EXCLUSION OF PETITIONER'S STATEMENTS TO
 
 BAUTHUES
 
 25
 Petitioner claims that the statements that she made to Bauthues during the secondary inspection at Sumas should be excluded because they were obtained in violation of the statutory right to counsel guaranteed by 8 C.F.R. Sec. 292.5(b). Assuming arguendo that a violation of this statutory right would implicate the exclusionary rule, no violation has been shown.
 
 
 26
 The right to representation was triggered when Petitioner became the "focus of a criminal investigation" and was "taken into custody." 8 C.F.R. Sec. 292.5. According to Bauthues' testimony, this occurred only after he had decided that Petitioner had made a false representation that might subject her to criminal liability, at which point he ceased his questioning and brought in a senior INS official who read Petitioner her "Miranda" rights. As discussed above, the Board was entitled to credit Bauthues' testimony and disbelieve the petitioner. Accordingly, Petitioner's statutory right to representation was not violated.
 
 
 27
 VI. BIAS ON THE PART OF THE IMMIGRATION JUDGE
 
 
 28
 Petitioner claims that the IJ was impermissibly biased. She bases this claim on the fact that he ruled against her on a number of motions and that he was aware of a letter-writing campaign, critical of his performance, that was conducted on her behalf to certain members of Congress.
 
 
 29
 The record reveals no evidence that the IJ acted with bias against Petitioner. Moreover, the IJ specifically informed Petitioner's counsel that, if counsel believed the allegations made in the letters, counsel should file a motion to recuse or disqualify the IJ. Counsel refused to do so. Petitioner's due process rights were not violated.
 
 VII. DENIAL OF PAROLE
 
 30
 Petitioner appeals the district court's order denying her claim that the INS District Director abused his discretion in denying her parole pending resolution of her case. Because the record shows that Petitioner was released on parole on May 19, 1993, subject to a number of conditions, the issue of denial of parole is moot.
 
 VIII. CONCLUSION
 
 31
 In the Refugee Act of 1980, Congress authorized the Attorney General, in her discretion, to award asylum to an otherwise deportable alien if the alien qualifies as a "refugee." A "refugee" is defined as a person who is "unable or unwilling" to return to his homeland "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.A. Sec. 1101(a)(42)(A) (West Supp.1994). 8 U.S.C.A. Sec. 1158(a) (West Supp.1994) (providing that a qualified refugee "may be granted asylum in the discretion of the Attorney General") (emphasis added); cf. 8 U.S.C.A. Sec. 1253(h) (West Supp.1994) (providing that Attorney General "shall not deport " any alien who qualifies for the withholding deportation remedy) (emphasis added). At the risk of belaboring the obvious, it must be noted that the mere fact that an alien qualifies as a refugee does not mean that he is entitled to asylum. Instead, as the Supreme Court has noted, "[w]hether or not a 'refugee' is eventually granted asylum is a matter which Congress has left for the Attorney General to decide." I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 450 (1987).
 
 
 32
 Because we find that the BIA's determination that Petitioner is not eligible for asylum is not supported by substantial evidence in the record, we reverse the district court's denial of Petitioner's habeas petition. The case is remanded to the district court with instructions to remand to the Attorney General so that she may determine, in her discretion, whether to award asylum under Section 208(a) of the Refugee Act and whether Petition is entitled to withholding of deportation under section 243(h) of the INA.
 
 
 33
 AFFIRMED IN PART, REVERSED IN PART and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3